SAMUEL ROTHSCHILD v. THE STATE.

CRIMINAL LAW. *Indictment.* *Obtaining goods by false pretense.* An indictment for obtaining goods by false pretenses, under the Code, section 4701, is good which charges the defendant, a merchant, with obtaining goods of another, by false representation, made with intent to defraud that other, of existing facts bearing upon his ability to pay for the goods.

FROM SHELBY.

Appeal in error from the Criminal Court of Shelby county. J. M. GREER, J.

LEHMAN and GANTT for Rothschild.

WRIGHT, HEISKELL and ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The prisoner has appealed in error from a judgment of conviction for the crime of obtaining goods under false pretenses. The indictment charges the prisoner with feloniously obtaining, with intent to defraud the owners, certain specified articles of jewelry, the property of a firm named, of the aggregate value of $1,178, by false pretenses made to the agent of the firm, which pretenses were: "That he had in his store, where he and the agent then were, pledges and pawns upon which he had loaned the sum of $5,000, then and there pointing out to said agent what appeared to

Rothschild v. The State.

be a large quantity of goods which he represented to be said pledges; that he, the said Samuel Rothschild, was in good and solvent condition; that he had had trouble formerly but was all right now; that he was then doing a good, large and prosperous business, and that his business was increasing, then and there point- ing out to said agent a large display of what he claimed to be solid gold goods in his show case; that he had a lease upon the whole store-room in which he did business, and rented part of what had been partitioned off for a cigar store, and that his condition was such that he would soon enlarge his business by occupying the entire store; that he could buy on credit all the goods he wanted; whereas in truth and in fact he well knew at the time that said pretenses and representations were false," the indictment then negativing each of the representations.

Motions were made in the court below to quash the indictment, and in arrest of judgment, and it is now insisted that these motions should have been sus- tained. The argument is that all of the alleged fraud- ulent pretenses are matters of opinion except those re- lating to the pawns and pledges and the solid gold goods, and that these latter, as well as the others, are confined to the subject of the ability of the defendant to pay for his purchases, and amount only to false- hoods on that subject, and are not sufficient under the statute.

The statute is: "Every person, who, by any false pretense, or by any false token, or counterfeit letter, with intent to defraud another, obtains from any person any personal property, * * shall on conviction be

imprisoned in the penitentiary not less than three nor more than ten years": Code, sec. 4701. The statute is borrowed from the original English statute, and is the same as is found on the statute books of several of the States. The generality of the language is such as to make it almost impossible to define the offense so as to cover all cases, and this court, in common with other courts, has said that each particular case must be determined on its own facts.

The statute was not intended to apply to every case of falsehood or dishonesty by which one party gets an advantage over another, for such a construction would be entirely too sweeping, and include many cases clearly not within the evil intended to be provided against. It was accordingly held, in one of the earliest cases in our books, after a conviction, that the obtaining of a quart of whisky by falsely pretending to be sent for it by another would not be sufficient if there was the least doubt whether the prosecutor was deceived by the pretense: *Chapman* v. *The State*, 2 Head, 36. But, in the very next case, it was held to be within the statute to obtain goods upon the pretense of a verbal order from another, with intent to defraud, and under such circumstances as to impose upon a man of ordinary prudence and caution: *McCorkle* v. *The State*, 1 Cold., 333. And it was afterwards held not to be proper prudence and caution to accept, without resorting to other sources of information, the representation of the defendant, upon which he obtained the goods, that he had received by express a package of goods of a named value, somewhat less than the

value of the goods obtained, which, with much other property of his, was at defendant's office, subject to be applied to the payment of the price of the goods obtained, consisting of a suit of clothes: *State* v. *De Hart*, 6 Baxt., 222. In *Delaney* v. *The State*, 7 Baxt., 28, money was obtained from a bank upon a pretended order in writing of a New York firm for which the defendant represented himself to be the agent. "It cannot be held," said Judge Deaderick in delivering the opinion of the court in this case, "that the 'common prudence and caution' held necessary to be exercised shall be such suspicion and distrust as to impose upon the person, who is the subject of the imposition, such inquiry and investigation into the facts pretended as to secure him against the possibility of imposition, or that such precaution against deception should be adopted as only the very cautious resort to; but that there should be something in the nature of the transaction itself to show that a person of common prudence and caution could not have been imposed upon thereby." And in *Bowen* v. *The State*, 9 Baxt., 45, where the indictment averred that the defendant had obtained money from the prosecutor by representing himself as a physician, claiming to have restored sight to a blind man, and stating that the prosecutor, his residence and his grand-daughter were poisoned, and that he would remove the poison, the indictment was sustained although the judgment was reversed for error in the admission of testimony. The prosecutor was an old and ignorant negro, and the court said: "If ordinary caution is to have its influence in the

application of the law, it must be such ordinary cau-
tion as we may naturally and reasonably expect to
exist under the circumstances and condition in life of
the person practiced upon." And this is in accord
with the current of authority: 2 Bish. Crim. Law,
sec. 464.

In *Moulden* v. *The State,* 5 Lea, 577, it was held
that the obtaining of goods by giving an order on his
employer for wages afterward to become due to the
defendant, and subsequently collecting the wages him-
self, concealing the fact that he had given the order,
would not constitute the offense of obtaining goods
under false pretenses. And in *Canter* v. *The State,* 7
Lea, 349, a judgment of conviction under the statute
was arrested, because the indictment did not show that
the title of the goods was parted with, and because
the pretense alleged for obtaining possession of the goods
consisting of a suit of clothes, namely that he could
not try them on at the prosecutor's store, was one not
likely to deceive any person, the merchant being as
well qualified to judge of this as the defendant. The
indictment contained a further charge that the defend-
ant represented that a third person named owed the
defendant and would get the goods, when they were
returned by the defendant, and pay for them. The
court said that the pretense must consist in the state-
ment of some existing fact, and not be a mere promise
of something to be done in the future. The repre-
sentation, it was added, that the person named owed
the defendant money was a representation of an exist-
ing fact, but which, taken alone, related only to the

·defendant's ability to pay. The other representations were as to what the defendant promised to do in the future, or what the third person was to do for him, and were not sufficient to sustain the indictment.

From this review of our decisions, it will be seen that they bear mainly on the question of the prudence and caution to be exercised by the person from whom the goods were obtained, and that they seem to settle that the representation relied upon as a false pretense, must be as to an existing fact, and not amount only to a promise of something to be done in the future either by the defendant or some third person. There is a suggestion in *Canter's* case that if the representation of an existing fact relate only to the defendant's ability to pay, it would be insufficient. But this suggestion must be taken in connection with the facts of the particular case, that the representation consisted in the statement that a third person named owed defendant a small sum of money, and would pay for the goods, and that it was not so much a false pretense as a false affirmation. An indebtedness, moreover, from a person of unknown means is not such a fact as, if it were true, would induce any person of ordinary prudence to part with his money: *State* v. *Magee*, 11 Ind., 154.

The false pretense, the authorities agree, must be of some existing or past fact, in distinction alike from a mere promise and a mere opinion, and this fact must be such in its nature as is known to the person employing the pretense: 2 Bish. Crim. Law, secs. 429, 415. If there is a sufficient false pretense of an ex-

isting or false fact, blended nevertheless with a promise for the future, the pretense is sufficient: *Id.*, secs. 415, 427. And there need be only one false pretense, and therefore, though several pretenses are set out in the indictment, yet if any one of them is proved, the indictment will be sustained: *Id.*, sec. 418. A common instance of a false pretense, says Mr. Bishop, is where one represents himself or his firm to be in a sound pecuniary condition, or to owe only so much, or to be worth so much money, knowing the facts to be otherwise; or falsely pretends to have a particular fund in his own hands or another's, whereby he gains a credit: *Id.*, sec. 437.

Tested by these rules, the averment in the indictment that the defendant could buy on credit all the goods he wanted, and that his business was prosperous and increasing, would be the mere expression of an opinion. The averment that the defendant would soon enlarge his business would amount only to a promise of future action. Other averments, such as "that he had trouble formerly but was all right now," and "that he had a lease upon the whole store room," and rented part of it, taken by themselves would amount to nothing. But the indictment may be divided into two averments, each of which may be considered as embodying a false pretense, viz:

First. That he, defendant, had in his store room, where he and the prosecutor then were, pledges and pawns upon which he had loaned $5,000, then and there pointing out to said agent what appeared to be a large quantity of goods which he represented to be said pledges.

Rothschild *v.* The State.

Second. That said Samuel Rothschild was in good and solvent condition; that he had had trouble formerly but was all right now; that he was then doing a good, large and prosperous business, and his business was increasing, then and there pointing out to said agent a large display of what he claimed to be solid gold goods in his show case; and that he had a lease on the whole store room in which he did business.

The first of these alleged false pretenses is undoubtedly the statement of an existing fact. The second is a statement of the defendant's pecuniary condition at the time, sustained by the representation of certain existing facts bearing on that condition. When the representation is in words, and there are conversations at different times, they may be connected to show a false pretense, though what was said on any one occasion would not be alone sufficient. And the question is for the jury whether the different conversations can be so connected as to constitute one transaction: 2 Bish. Crim. L., sec. 431. *A fortiori*, where the conversations are all at one time, or the various statements parts of the same conversation. All of these statements relate, it is true, to the ability of the defendant to pay for the goods obtained. And if that fact renders them insufficient to constitute a false pretense within the statute, then the indictment is bad. But in that view there never can be a statement of facts touching the pecuniary condition of a person upon the faith of which goods are parted with, which could

fall within the statute.  And the statute would merit
the reproach that it caught little rogues, but allowed
the big ones to escape.  The weight of reason and
authority is otherwise.  "In England and New York,"
says Judge Wright, and it may now be added in
other States, "under the same statute, it has been
held to be within the statute where a party has ob-
tained goods by falsely representing himself to be in
a situation he was not, or by falsely representing any
occurrence that had not happened, to which persons
of ordinary caution might give credit.  The ingre-
dients of the offense are obtaining goods by false
pretenses, and with an intent to defraud": *McCorkle*
v. *State,* 1 Cold., 333.  The intent to defraud makes
the felony, and its absence is a protection against
danger from mere expressions of sanguine hopefulness
or mistaken belief.  "There is always a point," says
Mr. Bishop, "at which opinion ends and fact begins.
The test must be the common sense of judge and
jury applied to the special facts of the case": 2
Crim. Law, sec. 429.  The indictment before us is suffi-
cient.

There being no error in the proceedings, the judg-
ment must be affirmed.